BRUMIT v. RAILROAD.

(*Knoxville.* November 24, 1900.)

1. RAILROADS. *Construction of, upon street not abatable as a nuisance, when.*

The construction and necessary excavation by a steam railway company of its main and side tracks along and upon a public street, when done by permission of the owner of the fee in the street, who has likewise the right to use or authorize the use of the street for street railway, gas. electric light, and other like purposes, does not, *per se*, constitute a nuisance that will be abated or restrained at the suit of lot owners abutting on the street who have no interest in the fee in the street, but only an easement of ingress and egress. (*Post, pp. 138, 139.*)

2. SAME. *Same.*

The construction and operation of a steam railroad along and upon a public street will not be abated or restrained as a public nuisance in any case at the suit of an abutting lot owner, unless he can show that he suffers therefrom some special and particular injury distinct from that suffered by other abutting proprietors on the street. (*Post, p. 138.*)

Case cited: Lowery v. Petree, 8 Lea, 674.

3. SAME. *Damages recoverable against, for impairment of abutting lot owners' right of ingress and egress in street.*

A steam railway company that constructs and operates its road upon a public street by permission of the owner of the fee in the street, is liable to the owners of abutting lots who possess only an easement of ingress and egress, for impairment of that easement by excavation and by blocking the street with its cars, or by excessive switching. (*Post, pp. 139, 140.*)

Cases cited: Railroad v. Bingham, 87 Tenn., 522; Harmon v. Railroad, 87 Tenn., 614; Smith v. Railroad, 87 Tenn., 626.

4. DEED. *Bounded on street.*

The owner of a lot abutting on a public street has not title, but only an easement of ingress and egress, in the street, when

his deed calls for the side of the street, and *a fortiori* where his vendor expressly excepts the street from the operation of the deed. (*Post, pp. 134–137.*)

5. SAME. *Vendee's rights determined from terms and face of deed.*

A vendee's rights are determined from the terms and face of his deed, and cannot be enlarged by reservations contained in his vendor's dedication of adjoining property for a public street. (*Post, pp. 137, 138.*)

FROM CARTER.

Appeal from Chancery Court of Carter County. JOHN P. SMITH, Ch.

SIMERLY & ALLEN for Brumit.

TIPTON & MILLER, BOREN, FOLSOM & EDENS and CURTIN & HAYNES for Railroad.

McALISTER, J. The object of this bill is to enjoin the defendant, a railroad corporation chartered under the laws of Virginia, but doing business in the State of Tennessee, from excavating and laying a switch track along Pine street, in the town of Elizabethton, Carter County, on which street complainant is an abutting proprietor, and to recover damages for the obstruction of the street by the work in progress, and upon final hearing that the Court will order the removal of the track already laid before the service of the

injunction. The preliminary injunction granted by the Chancellor was dissolved upon the coming in of the answer so as to permit the defendant company to complete the work upon executing a bond in the sum of $2,000 to indemnify complainant against any injuries to his property that may be occasioned by said work. The bond was accordingly executed, and the work on the switch and side track was completed by the company at a cost of several thousand dollars. A large volume of testimony was taken, and on the final hearing the Chancellor granted the relief sought and ordered the defendant company to tear up and remove the side track so constructed.

On appeal, the decree of the Chancellor was affirmed by the Court of Chancery Appeals. The cause is again before this Court on the appeal of the defendant company. The principal assignment of error is that the Court of Chancery Appeals erred in holding that the side track in controversy was built on Pine street without any authority of law, and that, so far as complainant's rights are concerned, said track is a nuisance and must be torn up and removed.

The material facts found by the Court of Chancery Appeals in its original and supplemental opinions are substantially as follows:

The town of Elizabethton, in Carter County, is unincorporated. Hence there was no consent of the town to lay down the track, nor was there

any authority conferred by the County Court. In 1892, what is known in the record as the Co-operative . Town Co., chartered under the laws of this State and owning a large body of land adjoining Elizabethton, laid out said land as an addition to the town. It divided its land into lots, streets and alleys, with designated names, and had the division platted by its engineer, and the plat or map thus made was recorded in the Register's office of Carter County, with the following dedication of the streets to the public, viz.:

"Know all men by these presents, that the Co-operative Town Co. of Tennessee does hereby dedicate to the public, for use as public highways, all the streets and alleys shown and designated on the plat hereto annexed, being Plat No. 1 of the part of said company's lands in Carter County, Tennessee; but the said company hereby excepts and reserves out of this dedication the fee simple title to all the land covered by or embraced in said streets and alleys, and all other rights and titles not herein expressly dedicated, and said company further reserves to itself the right to use and to authorize the use of all streets, alleys, commons and other public places for the location and operation of street railways, for water pipes and mains, for gas pipes, mains and posts, and for electric wires, poles and other structures for illuminating and other purposes."

This plat, with the above dedication attached, was duly recorded May 21, 1892.

Pine street, along which the company's side track has been laid, is one of the streets laid out in this plat. It is fifty feet wide, about 2,000 feet in length, and its course is nearly north and south, crossing and intersecting several other streets and alleys laid off on said map. Pine street has several residences, including that of plaintiff, and one storehouse fronting on it.

On the — day of ——, 1894, the Co-operative Town Co. sold to one J. F. Nance lots 55, 56, 57 and 58 in Block 25, fronting on Pine street about one hundred feet. Nance erected on his lot a comfortable two-story house, fronting on Pine street. The deed from the Town Co. to Nance contained this reservation, to-wit: "Reserving and excepting out of this conveyance, however, all streets, alleys and other highways indicated on said plat, and the fee simple title to the lands conveyed thereby." On the 26th of February, 1896, complainant Brumit purchased from Nance the above lots, including the residence thereon, and the Court of Chancery Appeals finds that Brumit purchased said lots subject to the reservation contained in the deed from the Town Co. to Nance. That Court further finds that Brumit's deed only called for the side of the street, and that he has no interest in the fee of the street.

The Court of Chancery Appeals further finds that, prior to complainant's purchase from Nance, and on the 23d of June, 1894, the Co-operative Town Co., for a consideration, conveyed to the Bristol, Elizabethton & North Carolina R. R., a corporation in this State, and whose rights and franchises were afterwards acquired by the defendant company, the right to put down a track of its railroad over and along Pine street, from Broad street, as is shown on its map, to its intersection with the East Tennessee & Western North Carolina R. R., a distance of 1,500 or 1,600 feet. Accordingly, the B., E. & N. C. R. R. built a single track of its road along the center of Pine street for the distance stated. The construction of this road on Pine street is not involved in this suit, but the present controversy is in respect to the right of defendant company to build a side or switch track on Pine street between the road already built• and the sidewalk of complainant, covering the entire length of Pine street.

The Court of Chancery Appeals further finds that on the 24th of July, 1894, the Co-operative Town Co. made a deed of conveyance to the defendant railway company or its successors to build two standard gauge railroad tracks along and through the center of Pine street, as platted on the map and registered, and that said conveyance was duly recorded. That Court also found that,

22 p—9

in addition to the deed executed to the railroad company on the 24th of July, 1894, there was another deed made by the successors of the Town Co., namely, the Watauga Land Co., to the defendant, for the consideration of $2,000, in which it authorized said company to build a side track on Pine street to connect with the narrow gauge railroad already mentioned.

That Court further finds that the Watauga Land Co. became the successor of the Town Co. and the owner of all its property. Complainant purchased one of his lots, No. 50 in Block 25, from the Watauga Land Co., and at the date of this purchase the B., E. & N. C. R. R. had already constructed its single track in the center of Pine street, in front of complainant's property. It has already been stated that this single track was on Pine street when complainant purchased the other lots, including his residence, from Nance.

It should also be remarked that when complainant Brumit purchased all of his lots, two conveyances were of record from the Town Co. and the Watauga Land Co., respectively, to the defendant, granting it, for a consideration, the right to build a side track on Pine street to connect with the narrow gauge railroad, originally owned by the East Tennessee & Western N. C. R. R.

The Court of Chancery Appeals also found that in the case of *Tipton* v. *Wright,* to enforce a vendor's lien against the Co-operative Town Co.

on the lands in question, an agreed decree was entered on the 24th of April, 1894, reciting "that a right of way may be, and the same is hereby, released to said Co-operative Town Co. over that part of the lands beginning at the intersection of Broad street, thence through and along Pine street to the narrow gauge railroad. The said right of way released from the vendor's lien is for one standard gauge railroad."

It appears that the B., E. & N. C. R. R. had been built from Bristol to Elizabethton in 1893, and in order to make terminal connections with the narrow gauge—the East Tennessee & Western North Carolina R. R.—it was necessary to obtain a right of way over the lands of the Town Co., and the effect of the foregoing agreed decree was to enable the Town Co. to grant the privilege. Soon after said decree was entered, the Town Co. executed a deed to the railroad company—the B., E. & N. C. R. R.—for a right of way over Pine street so as to connect with the narrow gauge—E. T. & W. N. C. R. R. The defendant company, as already stated, is the successor of the B., E. & N. C. R. R., having purchased all its property and franchises.

The Court of Chancery Appeals found that, in November, 1899, defendant company commenced to construct the side track along Pine street, about parallel with the previous track in front of complainant's property, claiming the right to do so

under a license granted it by the Watauga Land
Co. It further finds that defendant company, in
constructing its switch, was proceeding to excavate
the street, on a level with the bed of its origi-
nal track, out to the edge of the four-foot side-
walk in front of complainant's property; that it
proposed to excavate and level the other side of
the street in the same way, and that the work
as thus completed left the sidewalk in front of
complainant's property and the front of his lot
practically on a perpendicular embankment, from
thirty inches to three feet above the street level.
It also left, says that Court, a street way of
only nine or ten feet in width between the track
of the company and the sidewalk in front of
complainant's lot. The present bill, it is stated,
was filed about the time the excavating process
reached complainant's property.

It was also found by the Court of Chancery
Appeals that the single track laid in the center
of Pine street was used as a switch track to
connect with the narrow gauge railroad, and that
the additional side track put down was intended
as a switch track, to be used for switching pur-
poses in handling the business of the company.

The Court of Chancery Appeals also finds that,
after the dissolution of the injunction herein, de-
fendant company placed dirt and macadam on
the sides of the street, leveling them up, as a
general thing, with the tops of its cross-ties under

its rails. The tracks on Pine street are used from an hour and a half to two hours or more daily, in switching cars over these tracks. During this time, all the witnesses say, the street cannot be safely used with vehicles, and complainant cannot approach the front of his house with a horse and vehicle with safety. Cars are often left on the tracks for hours and over night and on Sundays. Below the property of complainant about a hundred yards, the defendant company has practically used all the street with its switch tracks, and, as a general thing, the street is blocked at this point with its cars.

Upon these facts, the Court of Chancery Appeals held, as matter of law, that the defendant company had constructed its side track along Pine street without any legal right or authority, and that complainant's easement on said street as an abutting proprietor was so injuriously affected as to entitle him to maintain a bill in his private capacity to restrain said construction. That Court adjudged said side track a nuisance, and ordered it torn up and removed, as already stated.

The Court of Chancery Appeals, in its learned opinion, cites a large number of cases from sister States in support of its conclusions. We have not had access to the authorities cited, nor have we deemed it necessary to consult them, for the reason we are thoroughly satisfied every question

arising upon the record has been definitely settled by the decisions of this Court.

The first matters to be clearly understood are the respective rights of the complainant as an abutting proprietor, and the defendant company as a commercial railway on Pine street. It must be admitted that complainant, Brumit, has no interest in the fee of the street, since his deed only calls for its sides, and, moreover, as we have seen, his grantors expressly reserved the fee. It is said in *Smith* v. *Street Railroad,* 3 Pickle, 632, viz.: "It is well settled that a steam railway is a burden not ordinarily contemplated in the dedication or condemnation of land for a public street, and, as a consequence, that the original owner, in whom the ultimate fee resides, may recover compensation for the subjection of the fee to such new and independent use. An abutting lot owner, such as plaintiff is shown to be, without more than an easement of way and not owning the ultimate fee in the soil, certainly enjoys all that reason entitles her to claim and all that the law will allow, when she has the free and unobstructed use of the street for all purposes of ingress and egress. For such purposes she may use the whole street, or so much of it as may be necessary, but in doing so she cannot have the exclusive use for herself at all times, nor can she recover damages for the use of it by others, unless such

use be excessive or incompatible with her rights as already defined. To entitle her to claim damages, she must sustain some private or particular injury; something must be done which injures her access to her lot on the street before she can sue successfully. Inconvenience or annoyance which she suffers in common with the public gives no right of action," citing authorities. In that case it appeared that the street railroad was lawfully upon the street, in accordance with a lawful contract with the city authorities, as required by its charter. So it was held that it was liable in damages to the plaintiff only for the unlawful use and operation of its road, and that any use that may be excessive or amount to a nuisance will be unlawful, and give the plaintiff a right of action. It was further held that for such unlawful acts, if done, the law allows successive actions.

So in the case of *Railroad* v. *Bingham,* 3 Pickle, 522, which was an action by an abutting lot owner to recover damages against a steam railroad for the occupation of the street in front of her property. Plaintiff claimed, first, damages consequent upon the lawful and necessary use of a public street for railroad purposes; second, damages consequent upon the grading of the street by the railroad company; third, damages by obstruction of her right of ingress and egress by lawful occupation and use of street by railroad company;

fourth, damages resulting from excessive and unnecessary and unlawful use of the street in front of her premises, and amounting to a nuisance. The Court, construing Mrs. Bingham's deed, held that her property was confined to the side of the street, and that she owned no part of the fee in the street. No part of her property having been taken or occupied by the railroad company, her damages must be limited to such injuries as she can show herself to have sustained as the owner of a mere easement in the street in front of her premises. The Court held in that case the railroad was not a trespasser upon the street, but was there by lawful authority. Further, that the sound and well-settled rule is that no action will lie by an abutting lot owner who does not own the fee in the street, for injuries which merely result from the legal and reasonable use of a public street by a railroad company, and which leaves his right of ingress and egress reasonably sufficient, citing cases. The company would be liable for any impairment of plaintiff's easement of ingress and egress on the street. So it was held that an abutting lot owner who does not own the fee in the street may recover of a railroad company operating its cars by legal authority such damages as may result from an unlawful, excessive, or improper use of the street, as, for instance, for leaving its cars standing,

unreasonably parking its cars, etc. See, also, *Harmon* v. *Railroad,* 3 Pickle, 614.

As we have already seen, the deed from the Town Co. to Nance expressly reserved and excepted out of that conveyance "all streets, alleys, and other highways indicated on said plat, and the fee simple title to the lands conveyed thereby." Complainant, Brumit, purchased the property in question from Nance, subject to said reservation. In addition to this, Brumit's deed only called for the side of Pine street, which, as matter of law, excluded any interest in the fee of the street. So that it is perfectly clear that complainant is in no attitude to complain that the side track proposed would be an additional servitude upon the fee of said street. But the Court of Chancery Appeals was of opinion that the reservation in the deed to Nance was only intended to conform to the plat and deed of dedication of the Co-operative Town Co., and that if the reservation in the Nance deed was broader than the registered reservation in the plat, it would be inoperative, because the rights of abutting lot owners purchasing on the faith of the dedication were fixed, etc. But we think this an erroneous view. Complainant, as a purchaser of abutting lots, must be bound by the provisions of his own deed, or that of Nance under which he held, and that deed expressly excluded any interest whatever in the fee of the streets. Moreover,

we are of opinion that the registered dedication and plat reserve to the Town Co. "the fee simple title to all the land covered by or embraced in said streets and alleys," for this is the express language of the dedication. The dedication then proceeds, viz.: "And said company further reserves to itself the right to use and to authorize the use of all streets, alleys, and commons, and other public places for the location and operation of street railways, for water pipes and mains, for gas pipes, mains, and posts, and for electric wires, poles, and other structures for illuminating and other purposes." There can be no doubt that, under the dedication, as well as the provisions of complainant's deed, all interest in the fee of the streets was expressly excluded, and, this being so, complainant cannot be heard to make the question that the construction of the side track on Pine street is an additional servitude upon the fee. Nor can complainant proceed upon the idea that said side track is a nuisance, and ask its abatement, without showing some especial or particular injury suffered by him, °distinct from other abutting proprietors · on that street. *Lowery* v. *Petree,* 8 Lea, 674; *Perkins* v. *Ross,* 42 S. W. R., 61; 6 Am. Rep., 332; *Garnett* v. *R. R. Co.,* 25 Am. & Eng. Enc. R. R. Cases, 226; 20 Am. & Eng. Enc. R. R. Cases, 25; 73 Fed. Rep., 696.

But, in our opinion, it cannot be successfully

maintained that the defendant company is a trespasser on said street, and that the construction of said side track is a public nuisance. The defendant company acquired a right to occupy said street, under conveyances from the Co-operative Town Co. and its successor, the Watauga Land Co., which corporations owned the fee of said street and the lots adjoining. The deed from the Town Co. to the Railroad Co., made in 1894, granting to it the right to build two standard gauge tracks on Pine street, was registered two years before complainant, Brumit, purchased his lots, in 1896. One of the tracks had already been built, and was being used, when complainant purchased. These conveyances exclude altogether the idea that defendant company was a trespasser on said street, or that the construction of said side track was a nuisance *per se.*

So that, in its last analysis, the only question for determination upon this record is, whether or not complainant's easement in the street has been impaired by the construction of the side track, and whether the operation of cars thereon has been excessive. Complainant would be entitled to damages for such injuries, whether the defendant company is lawfully or unlawfully upon the street, and although the abutting lot owner does not own the fee in the street. *Bingham* v. *Railroad,* 3 Pickle, 522.

If the defendant company creates a nuisance

by blocking the street with cars, or by excessive switching, thus impairing complainant's easement of ingress and egress, he is entitled to have such a nuisance abated and, incidentally, to damages for such injuries.

In *Harmon* v. *Railroad,* 3 Pickle, 614, it was held that if a railway company, lawfully located upon a street in a city under its charter and by permission of the local government, uses the street in 'the operation of its road beyond what is necessary for the proper running of its trains, and by such excessive and improper use substantially destroys the easement of way and ingress and egress appurtenant to an abutting lot, the owner of such lot can maintain successive actions for such nuisance, recovering the damages that have accrued up to the time that each action was brought, etc. *Railroad* v. *Bingham,* 3 Pickle, 522; *Smith* v. *Railroad,* 3 Pickle, 626.

Complainant is entitled to an order of reference to assess his damages for the impairment or destruction of his easement of ingress and egress appurtenant to the street, and also to damages for the excessive use of the street caused by parking cars thereon, blocking the street, etc. But complainant is not entitled to a decree to tear up and remove the track, and the decree of the Court of Chancery Appeals so holding is erroneous, and the same is reversed. The costs of the appeal will be paid by the defendant company.