IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION

JACKSON, APRIL TERM, 1916

ILLINOIS CENT. R. Co., *et al. v.* MORIARITY, *et al.*

(*Jackson.* April Term, 1916.)

1. **EMINENT DOM'AIN.** Right to compensation.
   Under Const. art. 1, sec. 21, providing that no property shall be taken or applied to public use without consent or without just compensation, when a portion of a street immediately adjacent to a complaining owner's property is obstructed so as to destroy or substantially impair the owner's easement of access or way in the street abutting his land, he is entitled to compensation. (*Post, pp.* 450-452.)

Cases cited and approved: Anderson v. Turbeville, 46 Tenn., 158; Railroad v. Bingham, 87 Tenn., 530; Smith v. Railroad, 87 Tenn., 630; Hamilton County v. Rape, 101 Tenn., 222; State v. Taylor, 107 Tenn., 463; Coyne v. Memphis, 118 Tenn., 651; Humes v. Mayor of Knoxville, 20 Tenn., 408.

Constitution cited and construed: Art. 1, sec. 21.

446                                                        [135 Tenn.

Railroad Co. v. Moriarity.

2. EMINENT DOMAIN. Right to compensation. "Taking."

Under Const. art. 1, sec. 21, providing that no property shall be taken or applied to public use without consent or without just compensation, any diminution of the value of property directly invaded which is not shared by the public generally is a "taking." (*Post, pp.* 452-453.)

Cases cited and approved: Richards v. Washington Terminal Co., 233 U. S., 546; Railway v. Bingham, 87 Tenn., 522; Harmon v. Railroad, 87 Tenn., 614; Chattanooga v. Dowling, 101 Tenn., 342; Brumit v. Railroad, 106 Tenn., 124; Terminal Co. v. Jacobs, 109 Tenn., 727; Terminal Co. v. Lellyett, 144 Tenn., 368; Gossett v. Railway, 115 Tenn., 376.

Case cited and distinguished: Lewisburg & N. R. Co. v. Hinds, 183 S. W., 985.

3. EMINENT DOMAIN. Right to compensation. Closing street.

Where a street is closed by elevation of railroad tracks not abuttin on, but adjacent to, plaintiff's land, he is entitled to compensation under Const. art. 1, sec. 21, prohibiting taking property for public use without compensation, since his easement of access extends from his land to the next intersecting street in either direction. (*Post, pp.* 453-458.)

Case cited and approved: Town of Clinton v. Turner, 95 Miss., 594.

Cases cited and distinguished: Newark v. Hatt, 79 N. J. Law, 548; Henderson v. Lexington, 132 Ky., 390; Vanderburgh v. Minneapolis, 98 Minn., 329; In re Melon Street, 182 Pa., 397.

4. EMINENT DOMAIN. "Police power." Exercise of power. What constitutes.

Closing a street by elevation of railroad tracks for safety of the public is referable to the power of eminent domain, and not to the police power, since the latter, though it may take property, does not appropriate it to a different use; while eminent domain transfers private property. to a public agency to use as its own. (*Post, pp.* 458-461.)

Cases cited and approved:    Bradbury v. Vandalia Levee, etc.,
District, 236 Ill., 36; Turnpike Co. v. Davidson County, 91
Tenn., 291.

Case cited and distinguished:    McKeon v. N. Y., N. H. & H. R.
Co., 75 Conn., 343.

5. **EMINENT DOMAIN.  Right to compensation.**

Rights of railroads put to expense in elevating tracks are not
like those of adjacent landowners whose easement of access
is destroyed by the elevation of tracks, since the railroads still
have their original easement, but the owners do not.  (*Post*,
*p.* 461.)

6. **APPEAL AND ERROR.  Scope of review.  Intermediate court.
amount of damages.**

Where the trial court and the court of civil appeals concur as to
the amount of damages to a property owner by destruction of
his easement of access by elevation of railway tracks across
an adjacent street, and the evidence is conflicting, the supreme
court will treat such concurrent finding as conclusive.  (*Post*,
*p.* 461.)

Cases cited and approved:  Grant v. Railroad, 129 Tenn., 398;
Carolina, etc., R. R. Co. v. Shewalter, 128 Tenn., 363.

---

FROM SHELBY

---

The defendants in error are the owners of business
property on the corner of Main street and Virginia
avenue, in Memphis.   The premises front on Main
street, which runs north and  south,  forty-two  and
one-half feet, and extend back along Virginia avenue,
which runs east and west one hundred feet.

The city of Memphis undertook a scheme to do
away with grade crossings in certain sections of the

municipality, and in the progress of this work it was
necessary that the tracks of the plaintiffs in error
at the point where they cross Virginia avenue in the
rear of the premises described be elevated above
the level of the street several feet.   This elevation of
the railroad tracks was intended to close, and did
close, Virginia avenue at this point. . The obstruc-
tion was at a point on Virginia avenue between Main
street and the next parallel street east of Main street.
There was a contract between the city and the rail-
road companies ,by the terms of which the latter
were to pay for damages to property.

This suit was brought against the city of Memphis
and the defendant railroad companies to recover
damages alleged to have been suffered by the property
.of defendants in error in consequence of the closing
of Virginia avenue at the point mentioned.   There
was a judgment in favor of the property owners
for $3000, which was affirmed by the court of civil
appeals, and the case is before  us  on  petition  for
*certiorari* filed by the railroad companies.   A non-
suit was taken as to the city in the trial court.

It is first insisted in behalf of the railroad com-
panies that the landowners sustained no special
damages for which they are entitled to a recovery;
that the damages suffered were only such as were
common to other members of the community; and
that the case is a proper one for the application
of the principle of *dammum absque injuria.*

135 Tenn.—29

The contention of the landowners is that there was a taking of their easement of access or easement of way in Virginia avenue, for which they, are entitled to compensation under the Constitution of the state and under the federal Constitution.

For more than fifty years this court has in published opinions recognized the right of an abutting landowner to ingress and egress between his property and the street, and a right of passage in the street bounding his property. Such property right has been called an easement of access or an easement of way in the street, and in numerous cases the court has held that such property right could not be taken from the abutting land owner without compensation.

It has been said that such owners had an easement of way in the street in addition to the use of it in common with the people generally; that such easement was private property as much as if it were corporeal property; that the rights of the abutting owners might not be ignored by the municipality, but must be reasonably preserved or compensation paid for injury done them; and that, if such easement was taken away or impaired or incumbered without the consent of the landowner, there was a taking of his property for public purposes for which he was entitled to compensation. *Anderson* v. *Turbeville,* 46 Tenn. (6 Cold.), 158; *Railroad* v. *Bingham,* 87 Tenn., 530, 11 S. W., 105; *Smith* v. *Railroad,* 87 Tenn. 630, 11 S. W., 709; *Hamilton County* v. *Rape,* 101 Tenn.,

222; 47 S. W., 216; *State* v. *Taylor,* 107 Tenn., 463, 64 S. W., 766; *Coyne* v. *Memphis,* 118 Tenn., 651, 102 S. W., 355.

It is true that some of these expressions of the court were unnecessary to the disposition of the particular matters then under consideration, but none the less they all serve to illustrate the opinion this court has entertained as to the nature of the' right of an abutting owner to an easement of access to an adjacent street and to an easement of way in the street.

In all these cases it was distinctly held that the destruction or serious impairment of the landowner's right of ingress and egress was a taking of his property—a taking of his easement of access or easement of way in the adjacent street. This being so, compensation is secured to the landowner by the provisions of the Constitution, art. 1, section 21.

It cannot be doubted therefore, under the adjudicated cases in this State, that, when that portion of the street immediately adjacent to the complaining owner's property is obstructed so as to destroy or substantially impair the owner's aforesaid easement of access or easement of way, such owner is entitled to compensation.

There is one case in Tennesse said to be to the contrary, namely, *Humes* v. *Mayor of Knoxville,* 1 Humph. (20 Tenn.), 408, 34 Am. Dec., 657. This, though, is a change of grade case. Perhaps it might be distinguished on that ground. It is not necessary,

however, to comment on this case, for its authority has in two later cases been confined to actions in tort, and cases like the one at bar are said not to involve a question of tort, but of taking a valuable property right without compensation. *Hamilton County* v. *Rape,* supra; *Coyne* v. *Memphis,* supra.

In the case before us we are asked to go beyond our previous decisions. Our former cases have protected the landowner's easement of way in the street immediately adjacent to his premises. They have declared that he might not be deprived of access to the street on which his land abutted, and that his easement of way in this portion of the street might not be taken, without compensation.

We are now asked to hold that this easement of way in the adjacent street extends in both directions beyond the land of the owner, and that the owner is entitled to compensation if the street be closed beyond the limits of his property. In this case there has been no interference with the landowner's easement of way in Main street. Only Virginia avenue has been obstructed, and that obstruction is located at a point in the rear of the premises described, and the easement of way is only impaired to this extent. Still the plaintiff's premises has lost the special value attached to a corner lot.

The question then is: How far does this private right to an easement of way extend?

The answer is to be determined by considering when the damage of the landowner ceases to be special and

becomes common to the public.  The difficulty lies in determining what is special damage.

In the late case of *Lewisburg & N. R. Co.* v. *Hinds,* 183 S. W., 985, this court adopted a recent expression from the supreme court of the United States as follows:

"Any diminution of the value of property not directly invaded nor peculiarly affected, but sharing in the common burden of incidental damages arising from the legalized nuisance, is held not to be a 'taking' within the constitutional provision." *Richards* v. *Washington Terminal Co.,* 233 U. S., 546, 34 Sup. Ct., 654, 58 L. Ed., 1088, L. R. A., 1915A, 887.

It was said in *Lewisburg & N. R. Co.* v. *Hinds,* supra, that our own cases are to the same effect, citing *Railway* v. *Bingham,* 87 Tenn., 522, 11 S. W., 705; *Harmon* v. *Railroad,* 87 Tenn., 614, 11 S. W., 703; *Chattanooga* v. *Dowling,* 101 Tenn., 342, 47 S. W., 700; *Brumit* v. *Railroad,* 106 Tenn., 124, 60 S. W., 505; *Terminal Co.* v. *Jacobs,* 109 Tenn., 727, 72 S. W., 954, 61 L. R. A., 188; *Terminal Co.* v. *Lellyett,* 114 Tenn., 368, 85 S. W., 881; *Gossett* v. *Railway,* 115 Tenn., 376, 89 S. W., 737, 1 L. R. A. (N. S.) 97, 112 Am. St. Rep., 846.

The converse of the proposition quoted is true, as the cases cited demonstrate, and any diminution of the value of property, directly invaded at least, which is not shared by the public generally, is a taking within the constitutional provision.

The courts have found much difficulty in determining where special damage shades into general damages. A number of well-considered modern cases involving the closing of streets have declared that the landowner's private easement of way extends along the street on which his property abuts to the intersecting streets on either side. This rule, while it may seem somewhat arbitrary, is probably the most satisfactory result that can be reached.

In the cases just mentioned proceedings to recover were had under statutes and Constitutions with varying provisions. The plaintiff's right to recover in all these cases, however, was apparently made to depend on the specialty or peculiarity of his damages. The facts in the cases to which we shall refer were similar to the facts of the case before us.

The New Jersey Court of Errors and Appeals has said:

"There is nothing to be found in the adjudged cases in this State inconsistent with the view that the right of the public in an open highway is of passage over it, and that this right the abutting owner has in common with the public, and suffers in common with it when deprived of such right by an obstruction to that use, and that there is, in addition to this, at least a special right of access to his land from the next adjacent intersecting streets over the highway on which it bounds, and that such right of access, in either direction the street allows, is a special advantage to the lands lying on it between any two inter-

secting streets. It is not a question whether the land adjoins the vacated portion or not, but rather will its value be impaired if deprived of one of the immediate means of access to it? We are of opinion that such right of access is of special advantage to all the land abutting a highway in a block between two streets, and that the vacation of a part of such street diminishes the value of all the land between the next adjacent cross streets. . . ." *Newark* v. *Hatt,* 79 N. J. Law, 548, 77 Atl., 47, 30 L. R. A. (N. S.), 637.

The Kentucky court of appeals has said:

"But our conclusion upon this question is that the only persons who are entitled to compensation and are necessary parties to the proceeding are those whose property abuts upon or adjoins the street, alley, or highway proposed to be closed. We do not mean by this to limit the property owners entitled to compensation or who are necessary parties to the action to those who own property immediately at the point of closure, but think it should embrace all persons and all property abutting upon the street proposed to be closed. To illustrat, if it is desired to close a portion of the street or the entire street known as A. between B. and C. streets, then all the persons owning property upon A. street between B. and C. streets are necessary parties to the action, and entitled to compensation." *Henderson* v. *Lexington,* 132 Ky., 390, 111 S. W., 318, 22 L. R. A. (N. S.), 20.

The Minnesota supreme court has held that an owner of lots on a street which has been vacated from

the line of such lots to another street a portion of which was also vacated, and which bounded on one side the block in which said lots are located, thus cutting off his means of access from that portion, and leaving his property fronting on a cul-de-sac, suffers an injury special and peculiar to his property, not common to the public at large, and is entitled to compensation under the constitutional provision which forbids the taking or damaging of private property for public use without compensation. *Vanderburgh* v. *Minneapolis,* 98 Minn., 329, 108 N. W., 480, 6 L. R. A. (N. S.), 741.

While the opinion of the Minnesota court calls attention to the fact that their Constitution contains a provision for compensation for property damaged as well as property taken, nevertheless the court held that the damage sustained in this case was special.

In *Vanderburgh* v. *Minneapolis,* supra, the court said:

"The injury in such case is not of the same kind, differing in degree only, but is an additional injury caused by the impairment of an entirely distinct right —the right of ingress and egress. A property owner's special right in such cases is not limited to the part of the street on which his property abuts; his right in this respect is the right of access in any direction which the street permits, and, as affecting the same, no distinction can be drawn between a partial and a total destruction."

---

Railroad Co. v. Moriarity.

---

The Pennsylvania supreme court has held that owners of property abutting on that portion of the street which is not vacated, but which is left a cul-de-sac by vacating another part of the street, are entitled to damages under a statute referred to therein. *In re Melon Street,* 182 Pa., 397, 38 Atl., 482, 38 L. R. A., 275.

In disposing of the case above the Pennsylvania court said:

"Are we prepared to declare in this case that access to the claimant's properties has not been impaired? Can the court say to these claimants: 'One opening to your properties is sufficient for your purposes; therefore no legal injury has been done to you by closing the other? Could we say that, if their properties fronted on two parallel streets, or were on the corner of two streets, one of which was vacated? Is it not more in accord with sound principles to say that their right of access was not limited by the frontage of their properties, but extended to the two intersecting streets, and that it is for the jury to say whether, under all the circumstances, the claimants have suffered substantial damages in consequence of the closing of one mode of access?" *In re Melon Street,* supra.

Mr. Lewis says:

"The extent and limits of the right of access cannot be well defined. But in general it includes the right to use the street as an outlet from the abutting property to a connecting highway by any mode of travel or conveyance appropriate to a highway, also the right to use the street in front of the property in connection with the

use and enjoyment of the property, in such manner as is customary or reasonable." Lewis on Eminent Domain (2d Ed.) section 91h.

To like effect see *Town of Clinton* v. *Turner,* 95 Miss. 594, 52 So., 261.

We recognize the difficulty of the question. The courts are by no means in harmony in determining the limits of the abutting owner's easement of way—in saying when his damage ceases to be special. For other authorities see cases collected in notes to 2 L. R. A. (N. S.), 269; 30 L. R. A. (N. S.), 637; 46 L. R. A. (N. S.), 615; 10 R C. L., p. 178.

. . It is well settled by our former decisions that every abutting owner has a right of ingress and egress, and that he has an easement of way in the street which bounds his property. We think it a just and fair result to hold that this easement of way or easement of access extends along any street or alley upon which his property abuts, in either direction, to the next intersecting street. An obstruction of the adjacent street within these limits is a taking of such private easement of way, for which compensation must be made.

It is possible that cases might arise in which an abutting owner's easement of way should be held to extend further, or should be more restricted, but, as a general rule, we announce the foregoing.

It is contended for plaintiffs in error that the obstruction of this easement of way was under the police power of the municipality, and not under the power of

eminent domain, and that therefore, the landowner is entitled to no compensation.

It is sometimes quite difficult to distinguish between the exercise of the police power and the exercise of the power of eminent domain. We think, however, the closing of this street must be referred to the power of eminent domain.

The police power, although it may take property, does not appropriate it to another use as a general rule, but destroys the property. In eminent domain property is taken from the owner and transferred to a public agency to be enjoyed by the latter as its own. 10 R. C. L., p. 7, Id., pp. 61, 62, and cases collected under note 16, p. 62.

In the case at bar a portion of Virginia avenue covered by the landowner's easement of way was taken from him and transferred to the plaintiffs in error. Plaintiffs in error now have the exclusive use of this portion of the street, and the defendants are deprived of the use thereof which they formerly enjoyed.

"While it is true that the courts will sustain a rather drastic interference with property rights, if the statute authorizing such interference is enacted in behalf of the public health, morals, or safety, it does not follow that every such enactment is an exercise of the police power. If private property is actually appropriated for a hospital, a prison, or to abolish a dangerous grade crossing, it is the power of eminent domain, and not the police power that is invoked." 10 R. C. L., p. 8.

A case quite similar to the one before us came before the Conneticut supreme court, wherein a railroad company was required to elevate its roadbed to abolish a grade crossing, and the court held that the duty of the railroad company to pay damages inflicted on an individual by the consequent obstruction of his easement of way was not removed because the railroad company was compelled by the State to make the changes in its roadbed for the public good. The court said of the railroad company:

"It was not in position of an ordinary agent of the State, selected to construct a public work, in which such agent has no personal interest. Its railroad served both public and private uses. It received a private benefit from its franchise, and it was bound to bear whatever burdens the charter which gave it had attached to its exercise, when such exercise required and resulted in the appropriation to its own use of rights and property vested in another." *McKeon* v. *N. Y., N. H. & H. R. Co.*, 75 Conn., 343, 53 Atl., 656, 61 L. R. A., 730.

This case as taken to the supreme court of the United States and affirmed in 189 U, S., 508, 23 Sup. Ct., 853, 47 L. Ed., 922.

See, also, *Bradbury* v. *Vandalia Levee, etc, District*, 236 Ill., 36, 86 N. E., 163, 19 L. R. A. (N. S.), 991, 15 Ann. Cas., 904.

*Theilan* v. *Porter,* 14 Lea, 626, 52 *A*m. Rep., 173, relied on by plaintiffs in error, is not in point. There was no appropriation of property there, only the de-

struction of property.   Neither is *Turnpike Co.* v. *Davidson County,* 91 Tenn., 291, 18 S. W., 626, in point. In that case the court showed there was no taking.

The rights of the defendants here cannot be assimilated to the rights of the railroad companies, although the latter were required to go to considerable expense in the elevation of their tracks.   True, the old road-bed of the railroad companies was destroyed, but their right of way or easement was not taken from them. There was only a regulation of the use of their easement.   They were put to much expense, but they still have their easement of way   unobstructed   and im-proved.   The condition of the   railroad   companies is more like that of a property owner who is required to pave the adjacent street, taking up his old pavement and laying a newer and better one.

On the amount of damages the trial court and the court of civil appeals have concurred.   The evidence is conflicting, and there seems to be no reason for departing from our usual practice of accepting the concurrent finding of both lower courts on the matter of damages as conclusive.   *Grant* v. *Railroad,* 29 Tenn., 398, 165 S. W., 963; *Carolina, etc., R. R. Co.,* v. *Shewalter,* 128 Tenn., 363, 161 S. W., 1136, Ann. Cas., 1915C, 605.

Other assignments of error are made on the record, all of which have been considered.   What has been heretofore said disposes of the points made in most of them.   We do not regard the others as requiring a detailed discussion in this opinion.

The judgment of the court of civil appeals is affirmed.